# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-05-00659-CR

Quentin Paul Freeman, Sr., Appellant

v.

The State of Texas, Appellee

FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT
NO. 11,081, HONORABLE TERRY L. FLENNIKEN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found Quentin Paul Freeman, Sr., guilty of arson of a habitation, a first-degree felony, and assessed a punishment of seventy-five years' imprisonment. *See* Tex. Penal Code Ann. § 28.02(a)(2), (d)(2) (West Supp. 2008). In three issues, Freeman complains that he was put to trial after having been found incompetent, violating his due process rights; that the trial court's sua sponte substitution of his counsel without good cause violated his right to counsel; and that he received ineffective assistance of counsel. In response to the State's assertion that Freeman was found to have regained competency before the case proceeded to trial, this Court abated the cause and instructed the trial court to forward a pre-trial competency determination.[1] After a hearing, such determination

---

[1] A competency finding made by a trial court after a previous incompetency finding can be affirmed only if the record contains a judgment, order, docket sheet entry, or other evidence demonstrating that the trial court made a determination of competency after the appellant's return from a state hospital. *Schaffer v. State*, 583 S.W.2d 627, 630 (Tex. Crim. App. 1979) (op. on reh'g). If this evidence is lacking in the record, the proper remedy is to abate the appeal and remand the cause to the trial court for a competency determination. *See id.*

was made and filed in this Court on April 15, 2008. Having reinstated Freeman's appeal, we will affirm the judgment of conviction.

**BACKGROUND**

On March 16, 2004, Freeman was indicted for arson of a habitation.[2] His first appointed counsel filed a motion for Freeman to undergo a psychiatric evaluation to determine whether he was competent to stand trial, which the court granted on May 26, 2004. Thereafter, Freeman's attorney commenced pre-trial discovery and filed a notice of intention to offer evidence of insanity. The first psychiatric evaluation of Freeman was conducted August 11, 2004, by court-appointed psychiatrist Dr. Susan Stone, who noted that Freeman appeared to experience auditory hallucinations and paranoid ideation, suggesting that he suffered from chronic paranoid schizophrenia. She concluded that while Freeman had "a fair understanding of court processes and the charges against him," he did not possess a present ability to consult with counsel and assist in his own defense; therefore, in her opinion, Freeman was not competent to stand trial.

On August 31, 2004, the trial court signed an Agreed Judgment of Incompetency and Commitment for Treatment, based on Dr. Stone's findings. Freeman was committed to the North Texas State Hospital for a period not to exceed 120 days and ordered to undergo further psychiatric examination.

On December 29, 2004, the chief psychiatrist at the hospital wrote to the trial court, stating that Freeman was competent to stand trial. He attached a report conducted by the hospital's

---

[2] Additional counts of arson of a vehicle and burglary of a habitation with intent to commit theft were included in the indictment, but these counts were subsequently severed. This appeal concerns only Freeman's conviction for arson of a habitation.

chief psychologist finding that Freeman had engaged "in a considered strategy of feigning and/or exaggerating symptoms" in an effort "to raise questions concerning his trial competency." On January 25, 2005, the trial court signed a second order requiring Freeman to submit to another psychiatric evaluation, which was again conducted by Dr. Stone. After acknowledging the hospital staff's findings that Freeman had been feigning incompetency, Stone described her second interview with Freeman, during which he was uncooperative and offered only "nonsensical responses [that] are not, in any way, consistent with any form of mental illness." While reaffirming her original opinion that Freeman might suffer from mental illness (specifically, bipolar disorder with psychotic features), Dr. Stone agreed with the hospital's conclusion that Freeman was competent to stand trial.

The record next reflects that a competency hearing was scheduled for April 12, 2005, although the trial court's docket sheet contains a notation that Freeman "refused to show up." The docket sheet further indicates that, as of the date of the competency hearing, Freeman was still being represented by his original appointed counsel. The same day, the trial court signed an order appointing Freeman new counsel; that order bears the judge's handwritten notation, "Defendant not present in courtroom."

The case proceeded to trial on August 1, 2005. The State produced evidence that in January 2004, Freeman intentionally set fire to the residence of Jimmie Lee Hill. The jury found Freeman guilty of arson of a habitation and sentenced him to seventy-five years' imprisonment. The trial court certified Freeman's right to appeal, and this appeal followed.

When the record was filed in this Court, it contained no indication that a determination of competency was made before the trial commenced.[3] Therefore, we abated the cause

---

[3] According to the State, copies of the documents relating to Freeman's competency were not filed with the trial court in this case because they were accidentally filed in duplicate in another pending case against Freeman. Regardless, letters from a psychiatrist or psychiatric evaluations

3

and instructed the trial court to forward a pre-trial competency determination.[4] On April 9, 2008, the trial court conducted a hearing at which it took judicial notice of the trial itself and admitted into evidence the documents concerning Freeman's competency that had been misfiled in the other pending case against him. At the conclusion of the hearing, the trial court found that it had made a pre-trial determination that Freeman was competent. A record of the proceeding was forwarded to this Court, and Freeman's appeal was reinstated.

## DISCUSSION

In his first issue, Freeman contends that he was denied due process when he was brought to trial without first having been found competent to stand trial. However, based on the supplemental record filed in this Court, it is clear that the trial court had determined that Freeman was competent before proceeding to trial, and we conclude that this argument is without merit. Freeman's first point of error is overruled.

In his second issue, Freeman asserts that the trial court's sua sponte substitution of his appointed counsel without his consent violated his right to counsel. A criminal defendant's right to counsel is guaranteed by both the federal and state constitutions. *See* U.S. Const. amend. VI; Tex. Const. art. I, § 10. This right contemplates a defendant's right to obtain assistance from counsel of the defendant's choosing. *Gonzalez v. State*, 117 S.W.3d 831, 836-37 (Tex. Crim. App. 2003).

---

containing recitations of competency are evidentiary only; they cannot operate as a substitute for a judicial determination of a defendant's competency to stand trial. *Bell v. State*, 814 S.W.2d 229, 232 (Tex. App.—Houston [1st Dist.] 1991, pet. ref'd). Instead, the record must contain a judgment, order, docket entry, or other evidence that the trial court actually made a determination of competency, *see Schaffer*, 583 S.W.2d at 631, and as the State conceded on appeal, the original record in this case contained no such determination.

[4] In the order, we included a time frame within which the parties could elect to supplement their original briefing in light of the trial court's determinations. No supplemental briefs were filed.

"It is well-established that when counsel appears on behalf of a criminal defendant as attorney of record, that lawyer, whether appointed or retained, is obligated to represent the client until the trial court actually grants a motion to withdraw or a motion to substitute counsel." *Bryant v. State*, 75 S.W.3d 628, 631 (Tex. App.—Fort Worth 2002, pet. ref'd). The trial court's power to appoint counsel to represent an indigent defendant does not include the concurrent power to remove counsel at the trial court's "discretionary whim." *Stearnes v. Clinton*, 780 S.W.2d 216, 222-23 (Tex. Crim. App. 1989); *see also* Tex. Code Crim. Proc. Ann. art. 26.04(j)(2) (West Supp. 2008) (appointed attorney shall continue representation until replaced by other counsel after "finding of good cause is entered").

A trial court's actions will rise to an unconstitutional level if the court unreasonably or arbitrarily interferes with a defendant's right to choose counsel. *Gonzalez*, 117 S.W.3d at 837. Therefore, to replace a court-appointed attorney during trial, the trial court must have some principled reason to justify the replacement of appointed counsel. *Buntion v. Harmon*, 827 S.W.2d 945, 949 (Tex. Crim. App. 1992) (orig. proceeding). While an indigent defendant does not have the right to the appointment of a particular attorney, *Malcom v. State*, 628 S.W.2d 790, 791 (Tex. Crim. App. 1982), it is clear that "once an attorney is serving under a valid appointment by the court and an attorney-client relationship has been established, the court may not arbitrarily remove the attorney over the objections of both the defendant and his counsel." *Stearnes*, 780 S.W.2d at 221 (quoting *Harling v. United States*, 387 A.2d 1101, 1102 (D.C. Cir. 1978)).

The State urges in response that neither Freeman, his original appointed counsel, nor his substituted appointed counsel objected to the trial court's substitution of counsel on April 12, 2005. While Freeman could not have objected at the time the substitution was made

because the trial court's docket sheet—our only record related to that hearing—indicates that he was not present, Freeman did not subsequently object at trial, where he was present throughout the proceedings. Nor did Freeman challenge the trial court's substitution of his counsel by writ of mandamus. *See Buntion*, 827 S.W.2d at 946 (writ of mandamus to prevent attorney's removal from case is "normal vehicle" for seeking relief); *see also Stotts v. Wisser*, 894 S.W.2d 366, 367 (Tex. Crim. App. 1995); *Stearnes*, 780 S.W.2d at 217.

Even assuming that Freeman did not waive error by failing to object to the substitution of counsel prior to this appeal, it is clear that any error was waived by Freeman agreeing to and accepting new counsel. *See Springer v. State*, 940 S.W.2d 322, 323-24 (Tex. App.—Dallas 1997, no pet.); *Emerson v. State*, 756 S.W.2d 364, 369 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd). If a defendant is displeased with his appointed counsel at any stage of the proceeding, he must bring the matter to the court's attention. *Springer*, 904 S.W.2d at 323. Although the record does not affirmatively show that Freeman agreed to the substitution of his counsel, neither does the record show that he objected to it, having raised the issue for the first time before this Court.

In the interests of justice, we further note that any error in the trial court's sua sponte substitution of counsel was harmless. *See Brown v. State*, 182 S.W.3d 427, 430 (Tex. App.—Texarkana 2005, no pet.) (where there is no "total deprivation of the right to counsel," error is not structural and is subject to harmless-error analysis) (quoting *Mendez v. State*, 138 S.W.3d 334, 340 (Tex. Crim. App. 2004)). When a constitutional error has occurred and is subject to harm analysis, the Texas Rules of Appellate Procedure require us to reverse the trial court's judgment "unless the court determines beyond a reasonable doubt that the error did not

6

contribute to the conviction or punishment." Tex. R. App. P. 44.2(a). Nothing in the record before us suggests Freeman was displeased with his substituted counsel's performance or had any valid reason to be displeased with that performance.[5] Accordingly, we conclude, beyond a reasonable doubt, that even if the trial court had erred in substituting counsel, such error did not contribute to Freeman's conviction or punishment. Freeman's second issue is overruled.

In his third issue, Freeman argues that he was denied the effective assistance of counsel because his counsel did not conduct an adequate pretrial investigation of Freeman's mental health history. To establish ineffective assistance of counsel, Freeman must show that his attorney made such serious errors that he was not functioning effectively as counsel and that these errors prejudiced Freeman's defense to such a degree that he was deprived of a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hernandez v. State*, 988 S.W.2d 770, 771-72 (Tex. Crim. App. 1999). To prove prejudice, Freeman must show that there is a reasonable probability that the result of his trial would have been different had counsel not performed deficiently. *Strickland*, 466 U.S. at 693-94. Our review of counsel's performance must be highly deferential, and there is a strong presumption that counsel's conduct fell within the wide range of

---

[5] The evidence of Freeman's guilt was overwhelming, including testimony from two witnesses who stated that, on the day before the fire, Freeman told them that he planned to burn down Hill's house; from the arson investigators, who testified that Freeman's clothes contained traces of gasoline, the same accelerant used in committing the offense; and from Hill herself, who was among several witnesses to testify that Freeman had made threats against her and had set fire to her truck days before the arson of her home. Freeman's substituted counsel effectively cross-examined each of the witnesses in an effort to show that witnesses were biased against Freeman and that Freeman could reasonably have had gasoline on his clothes due to his job working in a vehicle scrap yard. However, the jury, by its verdict, chose not to believe Freeman's theory of the events. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999) (jury is exclusive judge of credibility of witnesses and weight to be accorded their testimony).

7

reasonable professional assistance. *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005); *Ex parte Balderrama*, 214 S.W.3d 530, 533 (Tex. App.—Austin 2006, pet. ref'd). To overcome this presumption, any allegation of ineffectiveness must be firmly founded in the record and the record must affirmatively demonstrate the alleged ineffectiveness. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

As evidence of counsel's ineffectiveness, Freeman points only to the fact that the trial court twice ordered Freeman to submit to a psychiatric examination, but suggests that "neither of these examinations was ever performed." We disagree. The first order Freeman refers to, the Agreed Judgment of Incompetency and Commitment for Treatment dated August 31, 2004, was followed by Freeman's commitment to the state hospital and examination by hospital staff. This report concluded that Freeman had been feigning incompetence in order to avoid standing trial, but that he was in fact competent. Freeman also asserts that the January 25, 2005 order directing Freeman to submit to another examination by Dr. Stone, the court-appointed psychiatrist, was not complied with, but the record indicates otherwise. This examination was conducted on February 8, 2005. As Stone reported, Freeman's "nonsensical responses" during that examination were "not, in any way, consistent with any form of mental illness," leading Stone to conclude that Freeman did not meet the criteria for the insanity defense under the Texas Penal Code and that he was competent to stand trial. In light of the evidence that Freeman was indeed competent, as well as our disposition of Freeman's first issue, we do not agree that Freeman's counsel was ineffective for his failure to further investigate Freeman's mental health history. Freeman has not met his burden in showing that his counsel was ineffective, and his third issue is overruled.

8

**CONCLUSION**

Because we hold that the trial court properly determined that Freeman was competent to stand trial before proceedings against him commenced, that any error in the trial court's sua sponte substitution of counsel was harmless, and that Freeman did not receive ineffective assistance of counsel, we affirm the judgment of conviction.

_____

Diane M. Henson, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed:   September 19, 2008

Do Not Publish